IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:07cv246

| | |
|---|---|
| THOMAS EDWARD SCOTT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| THEODIS BECK, former Secretary of ) | |
| the North Carolina Department of ) | |
| Correc tions, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court upon Petitioner Thomas Scott's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1); Respondent's Motion for Summary Judgment (Doc. No. 5); and Petitioner's Response to the Motion for Summary Judgment (Doc. No. 12).

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On May 3, 2004, a grand jury in Buncombe County, North Carolina returned 27 indictments against Petitioner, a school teacher, stemming from nine sexual assaults he committed against a former student. (Doc. No. 6, Exhibit 6: Record on Appeal). Specifically, he was charged with two counts of first-degree statutory sex offense with a child under the age of 13 in violation of N.C.G.S. § 14-27.4; nine counts of sex offense with a student in violation of § 14-27.7(b); seven counts of statutory sex offense with a child under the age of 13, 14 or 15, by a defendant at least six years older, in violation of N.C.G.S. § 14-27.7A(a);[1] and nine counts of indecent liberties with a child. (Id. at 55, 57, 59, 62, 66, 68-70 and 79). On August 3, 2004,

---

[1] Because Petitioner's crimes spanned a several year period, two of the counts of statutory sex offense were charged under N.C.G.S. § 14-27.4, which governs offenses committed against persons under 13 years, and the rest were charged under N.C.G.S. § 14-27.7A(a), which pertains to offenses committed against persons between the ages of 13 and 15.

Petitioner pled guilty to these charges.

At the outset of the plea proceeding, the prosecutor read all of the charges to Petitioner, and then the Superior Court of Buncombe County determined several matters, including his competency to tender his pleas. (Doc. No. 6, Exhibit 2: Transcript of Plea and Sentencing Hearings at 2-6). Petitioner's answers to the court's questions established that his attorney had explained the charges to him, Petitioner understood the charges and their elements, and Petitioner understood the rights he was relinquishing by entering his guilty plea. (Id. at 5-7). His answers further established that he understood that he was pleading guilty to charges carrying various penalties, including several life sentences without the possibility of parole; that he was entering his plea of his own free will with a full understanding of what he was doing; and that he was guilty of the subject charges. (Id. at 6-7). Petitioner also acknowledged that the sole term of his oral plea arrangement with the State was that "the charges will be consolidated into not more than two Class B-1 felonies for the purpose of judgment," and he told the Superior Court that he "personally accept[ed] that arrangement." (Id. at 8). Petitioner also told the court that he was satisfied with his attorney's services; that no one had made him any promises or threats in order to induce his pleas; and that he had no questions about the proceedings or anything connected with his case. (Id. at 5 and 8).

Thereafter, defense counsel stipulated to the existence of a factual basis for the pleas and to Petitioner having a prior record level point that subjected him to sentencing under Prior Record Level II. (Id. at 9). The prosecutor then summarized the factual basis, recounting the following information for the Superior Court: the victim was born March 16, 1989, and Petitioner committed the offenses against him from in or around November 2001 until in or around December 2003. (Id. at 9-10). In November 2001, Petitioner became the victim's

teacher at a Christian school in Buncombe County. (Id.). Shortly thereafter, Petitioner began to perform oral sex on the victim, with at least eight such molestations occurring between November 2001 and June 2002. (Id. at 10). During the second school year (between August 2002 and June 2003), Petitioner performed oral sex on the victim approximately 25 to 26 times. (Id.). During the first semester of the third school year (between August 2003 and December 2003), Petitioner performed oral sex on the victim on approximately five occasions. (Id. at 11). Most of those offenses occurred on Wednesday afternoons when Petitioner was supervising the victim in after-school detention sessions. (Id. at 11 and 13). However, the victim also stayed at Petitioner's home for about four days in September 2002, and was there sexually molested by him on one or more occasions. (Id.). The victim revealed the foregoing abuse on March 27, 2004, after requesting assistance from police officers who were near his school. (Id. at 11-12). Petitioner subsequently confessed to the abuse during an interview with authorities. (Id. at 12).

After defense counsel declined to add additional facts to that proffer, the Superior Court found that there was a factual basis for Petitioner's guilty pleas but continued his sentencing hearing for two days. (Id. at 12). When the court reconvened the proceedings, the prosecutor called the victim's mother and two aunts as witnesses. Their testimony established that the victim was negatively impacted by the abuse, was angry, and had undergone a period of hospitalization in an institution. (Id. at 14-22).

Petitioner presented testimony from his wife, daughter, son, and three parents of former students. In sum, Petitioner's witnesses testified that he was a good husband, father, provider and teacher; that he had made a terrible mistake in committing the subject offenses but deserved another chance to be a contributing member of society. (Id. at 23-45). In addition, Petitioner took the stand and read his confession into the record. His confession reported, *inter alia*, that

3

he had been "fight[ing] these feelings" since he was 13; that after the victim became his student, he was unable to control his feelings and started regularly abusing the victim by, as he described it, giving him "an occasional blow job"; that the abuse took place on numerous occasions, including during an overnight field trip when he shared a room with the victim and another boy; that on a separate occasion, he had attempted to sodomize the victim but was physically unable to perform; and that his conduct had caused the victim pain, and he hoped that he would get help so that he would not follow in Petitioner's footsteps. (Id. at 46-54).

Petitioner also responded to questions from the attorneys. On direct examination, he testified that he had confessed to police because he "want[ed] this to stop" and did not want the victim to later act out and become a sex offender. (Id. at 54). Petitioner took responsibility for his crimes, noting that he should have stopped but was unable to do so. (Id. at 54-55). He asked the victim's family to convey his deepest grief to the victim for the pain that he had caused and expressed his hope that the victim would continue with therapy. (Id. at 55). Petitioner also apologized to his wife and family, asking for forgiveness and help with rehabilitation. (Id. at 55-56). On cross examination, Petitioner admitted that he had met the victim when he was 11 or 12 years old, but was unsure about how old the victim was when he first began to molest him. (Id. at 56-57). Petitioner acknowledged that he had violated the trust of his position; that he had loaded pornographic images, including boy-to-boy pornography onto his adult son's computer; and that he had deleted portions of his written statement when he read it into the record. (Id. at 57-61).

The Superior Court found that Petitioner had one prior record point, thereby subjecting him to sentencing at Prior Record Level II, to which Petitioner stipulated in open court. The court then consolidated all of the cases into a single Class B-1 felony and ultimately sentenced

4

Petitioner to one term of 288 to 355 months imprisonment. (Id. at 66).

On appeal before the North Carolina Court of Appeals, Petitioner raised three claims, including that the evidence was insufficient to support his sentencing at Prior Record Level II, and that he was subjected to double jeopardy by virtue of the Superior Court's entry of the judgments on his convictions for committing sexual offenses with a student. North Carolina v. Scott, 177 N.C. App. 288, 2006 WL 997850 at *1-2 (April 18, 2006) (unpublished). However, the State Court of Appeals found that Petitioner's stipulation sufficiently supported the court's determination of his prior record level. Id. at *2. Furthermore, pursuant to N.C.G.S. § 15A-1444(a2), which limits appellate review following a guilty plea to three precise sentencing challenges, the Court of Appeals declined to review Petitioner's double jeopardy claim. Id. Therefore, the Court of Appeals affirmed Petitioner's convictions but remanded his case to the trial court for the correction of clerical errors. Id. at *3.

On or about March 26, 2007, Petitioner filed a Motion for Appropriate Relief (MAR) essentially challenging the matters now raised in his federal Petition. (Doc. No. 6, Exhibit 11). That MAR was summarily denied on April 10, 2007 by the Superior Court of Buncombe County. (Id., Exhibit 12). Petitioner also filed a Petition for a Writ of Certiorari, which was summarily denied on June 13, 2007 by the State Court of Appeals. (Id., Exhibits 13 and 14).

On July 5, 2007, Petitioner filed the instant federal Petition arguing that he was subjected to double jeopardy because he was charged with 27 separate violations for his commission of nine acts of oral sex. (Doc. No. 1 at 6). He claims that he was subjected to ineffective assistance of counsel because counsel deceived and withheld information from him; told him that he could not present evidence to dispute the State's proffer; and stipulated to his prior record level against his wishes. (Id. at 6-7). Petitioner claims that he was not aware of counsel's actions "until it

was all over." (Id. at 7). Petitioner also raises a separate claim that he was denied his right to present evidence because counsel told him that he could not do so. (Id. at 8). Last, Petitioner claims that his confession was unlawfully induced and, therefore, is invalid. (Id. at 10).

On August 3, 2007, Respondent filed an Answer denying that Petitioner is entitled to any relief and also filed a Motion for Summary Judgment seeking the dismissal of his Petition. (Doc. Nos. 4 and 5, respectively). In his Supporting Brief (Doc. No. 6), Respondent asserts, *inter alia*, that Petitioner's guilty pleas stand as a bar to his double jeopardy challenge and, in any event, that the charges and convictions do not constitute double jeopardy because each violation required proof of an element that the other did not. (Doc. No. 6 at 3-7). Respondent further argues that Petitioner's allegations against his attorney are conclusory, fall short of the applicable legal test, and are belied by the evidence in the record. (Id. at 11-18). Similarly, Respondent contends that Petitioner's separate claim that he was prevented from presenting evidence is conclusory, baseless and belied by the record. (Id. at 19-20). Respondent last contends that Petitioner's challenge to the validity of his confession is waived by his guilty pleas, is conclusory and is patently incredible in light of the record evidence. (Id. at 20-22). Thus, Respondent argues that he is entitled to a judgment as a matter of law. (Doc. No. 5).

On October 15, 2008, Petitioner filed a Response by which he mostly rehashes his claims. (Doc. No. 12). Notably, however, the Response fails to address Respondent's arguments that his guilty plea constitutes a waiver of his claims of double jeopardy and an invalid confession. Instead, Petitioner's Response attempts to amend his ineffective assistance of counsel allegations by complaining, for the first time, that counsel failed to spend adequate time with him, falsely informed him that the victim would testify against him in order to induce his plea, and failed to investigate his case, thereby preventing her from discovering

6

contradictions between his confession, the State's proffer and "his statements in the discovery," (Id. at 4-5). However, because Petitioner has not obtained Respondent's consent nor sought leave of Court to amend his Petition with these new claims, they are not properly before the Court and will not be addressed. See Fed. R.Civ. P. 15(a)(2).

Petitioner also has filed Affidavits from his son and daughter but admits that they never were presented to the State Court. (See Doc. Nos. 13, 14 and 16). Thus, inasmuch as Respondent properly has opposed the Court's consideration of such Affidavits, they also will not be included in the Court's review of Petitioner's claims. See Wilson v. Moore, 178 F.3d 266, 279 (4th Cir. 1999) (the district court was not entitled to consider evidence in support of § 2254 Petition that was omitted without justification from state court proceedings).

## II. STANDARD OF REVIEW

The standard of review for habeas petitions where the claims have been adjudicated on the merits in the state court is set forth in 28 U.S.C. § 2254(d) and (e). A federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings, 28 U.S.C. § 2254(d), unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, § 2254(d)(2)." Berghuis v. Thompkins, 130 S.Ct. 2250 (2010) (internal quotation marks omitted).

A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000).

7

A state court decision involves an "unreasonable application" of Supreme Court law if the state court identifies the correct governing legal rule from the Supreme Court's decisions but unreasonably applies it to the facts of the particular petitioner's case. Id. at 407; see also Rompilla v. Beard, 545 U.S. 374, 380 (2005). A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Williams, 529 at 407.

An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. See id.; Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA [Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable- a substantially higher threshold."). A state court's application of established federal law must be "objectively unreasonable" in order to be considered an unreasonable application, "for a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly." Jackson v. Johnson, 523 F.3d 273, 277 (4th Cir. 2008) (internal quotations and citations omitted).

To the extent that a petitioner challenges a factual finding by the state court, federal habeas relief is available only if the state court has made an unreasonable determination of the facts in light of the evidence presented in that proceeding. 28 U.S.C. § 2254(e)(1). A determination of a factual issue made by a State court shall be presumed to be correct unless the habeas petitioner rebuts this presumption "by clear and convincing evidence." See Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

The standard of review to be applied by a district court on habeas review is "quite deferential to the rulings of the state courts." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). This means that state court decisions on the merits are to be given the benefit of the doubt. Bell v. Cone, 543 U.S. 447, 455 (2005). The Fourth Circuit has held that even a state court's summary decision finding that a petitioner fails to state a claim upon which relief can be granted, without a citation to any authority, will constitute an adjudication on the merits to which the deferential standard of Sections 2254(d) attaches. Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000); Bacon v. Lee, 225 F.3d 470, (4th Cir. 2000) ("Where . . . a state court summarily rejects a claim without articulating reasons, its order nevertheless constitutes an 'adjudication on the merits' for purposes of § 2254(d)."). However, because a summary decision gives no indication of how the state court applied federal law to the facts, the district court must necessarily perform its own review of the record and uphold that decision unless the record and pertinent federal law persuades the federal court that the state court's decision is "legally or factually unreasonable." Jarvis, 236 F.3d at 163 (citation omitted).

Furthermore, summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ. P., Rule 56(c)(2). Having conducted a careful review of the entire record in the light most favorable to Petitioner, the Court finds that no genuine issue of material fact exists such that a rational trier of fact could determine that Petitioner is entitled to relief on any of his claims. Therefore, Summary Judgment will be granted for Respondent, and Petitioner's Petition for a Writ of Habeas Corpus will be denied and dismissed.

## III. DISCUSSION

### A. Double Jeopardy

Petitioner clams that he was erroneously charged with three separate crimes for nine acts of oral sex, in violation of his double jeopardy rights. Respondent contends that Petitioner's claim is barred by his guilty pleas and, in any case, is baseless under the relevant legal precedent. Petitioner does not rebut Respondent's contention that this claim is barred by his guilty pleas, but merely argues that his charges violated double jeopardy.

Petitioner's claim is both procedurally barred and substantively deficient. When Petitioner raised this claim on direct appeal, the State Court of Appeals concluded that it was procedurally barred under N.C.G.S. § 15A-1444(a2). When he subsequently raised the claim in his MAR, that court summarily denied it in an order stating that Petitioner had "stated no grounds . . . for which relief can be granted . . . ." (Doc. No. 6, Exhibit 12). Thus, in addition to the procedural bar, Petitioner's claim was adjudicated on the merits, and the state court judgment is therefore entitled to deference. See Jarvis, 236 F.3d at 163.

Under the relevant Supreme Court precedent, Petitioner has waived his right to a review of the merits of this claim by virtue of his guilty plea. "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Mezzanatto, 513 U.S. 196, 200 (1995); see also Ricketts v. Adamson, 483 U.S. 1 (1987) (holding that the protection against double jeopardy is subject to waiver). In United States v. Broce, 488 U.S. 563, 565 (1989), the Supreme Court addressed the circumstances under which petitioners who pled guilty could assert a double jeopardy claim in a collateral proceeding. First, the Supreme Court observed that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final

10

judgment of guilt and a lawful sentence." Id. at 569. In that way, a guilty plea is an admission that the defendant committed the crime charged against him; therefore, "a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede[s] that he has committed two separate crimes." Id. at 570; (internal quotation mark and citation omitted). The Supreme Court further reasoned that when the judgment of conviction upon a guilty plea has become final and the defendant seeks collateral review of it, unless it appears on the face of the record that the court had no power to enter the conviction or to impose the sentence, the court's "inquiry ordinarily is confined to whether the underlying plea was both counseled and voluntary." Id. at 569.

In the instant case, the record reflects that Petitioner appeared before the Court and acknowledged his understanding of the 27 charges, their specific elements, and their corresponding penalties; that he acknowledged his right to plead "not guilty" and his understanding of the rights that he was relinquishing; that he admitted his guilt to the charges; and that he admitted that he was not threatened or otherwise induced to plead guilty but was entering his pleas of his own free will with a full understanding of what he was doing. (Doc. No. 6, Exhibit 2 at 4-8). The record further reflects that Petitioner told the Court that counsel had explained the foregoing matters to him and, notwithstanding his post-conviction allegations to the contrary, he was satisfied with her services. (Id. at 5). Accordingly, the Court finds that Petitioner's guilty pleas were both counseled and voluntary, and they now stand as a bar to the instant collateral claim of double jeopardy violations. Broce, 488 U.S. at 596.

The Court can find no basis on the face of this record for applying an exception in order to reach the merits of Petitioner's double jeopardy claim. Rather, the record establishes that Petitioner pled guilty to 27 indictments that facially describe three separate types of violations of

11

North Carolina law. Petitioner has not established that his conduct did not violate each of the laws with which he was charged. Similar to the litigants in United States v. Broce, Petitioner cannot prove his double jeopardy claim without contradicting those indictments, but that opportunity is foreclosed by his guilty pleas. See 488 U.S. at 576. See also Tollett v. Henderson, 411 U.S. 258 (1973) (finding that after a guilty plea, the defendant can only raise matters relating to voluntariness of the plea on federal collateral review, and not alleged violations of antecedent process). Therefore, because Petitioner has no right to a review of the merits of his double jeopardy claim, it will be summarily dismissed.

Furthermore, the Court has reviewed Petitioner's double jeopardy claim and determined that no such violation occurred because the offenses of conviction are sufficiently distinct from one another in that they each require proof of a fact that the other does not. See Blockburger v. United States, 284 U.S. 299 (1932). Specifically, the statutory sex offenses charged under N.C.G.S. §§ 14-27.4 and 27.7A(a) require proof that the victim was at or below a certain age, while the defendant was at a certain age and was a certain number of years older than the victim at the time of the offenses. See North Carolina v. Smith, 262 N.C. 583 (2008) (noting elements of § 14-27.4)); North Carolina v. Howard, 158 N.C. App. 226 (2003) (noting the same regarding § 14-27.7A(a)). The charges of committing sex offenses against a student under N.C.G.S. § 14-27.7(b) require proof that the defendant was a teacher, and the victim was his student at the time of the offenses, without regard for either party's age. See North Carolina v. Berrio, 690 S.E. 2d 559 (N.C. App. Jan. 19, 2010) (unpublished) (noting elements of offense). Finally, the charges of taking indecent liberties with a child charged under N.C.G.S. § 14-201.1, require proof of a defendant's purpose for committing those acts. See North Carolina v. James, 182 N.C. App. 698, 704 (2007) (noting requirement for proof of purpose and that "the particular act performed

12

is immaterial,"). Accordingly, this Court is unpersuaded that the State court's result is legally or factually unreasonable. See Jarvis, 236 F.3d at 163.

B.      **Ineffective Assistance of Counsel**

Petitioner claims that counsel was ineffective during his plea and sentencing proceedings. This claim was rejected by the MAR Court's summary order of dismissal. Therefore, the claim was adjudicated on the merits, and the State court's decision is entitled to great deference so long as it does not run afoul of § 2254(d) or (e).

Ineffective assistance of counsel claims are governed by the two-part standard articulated in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). First, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness," as judged by prevailing professional norms. Id. at 687-88. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Second, a petitioner must show that he was prejudiced by such constitutionally deficient representation. Id. at 694. In a case involving one or more guilty pleas, no prejudice exists unless the petitioner can demonstrate that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). When there is an allegation that counsel was ineffective at sentencing, a petitioner must show that his "sentence would have been more lenient" absent counsel's errors in order to establish prejudice. Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999). A petitioner bears the burden of proving Strickland prejudice, and in its absence, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290.

13

### *1.    Counsel's alleged deception and concealment*

Petitioner claims that counsel deceived him by hiding "the last two pages of the plea bargain to get [him] to [ac]cept it." Contrary to his assertion, the record reflects that there was no written plea bargain for counsel to conceal. Rather, Petitioner and the State had only an oral plea arrangement, the sole condition of which Petitioner discussed with the Court during his plea hearing. (Doc. No. 6, Exhibit 2 at 8). Furthermore, when the Court stated that Petitioner had a plea arrangement which merely called for his convictions to be consolidated into no more than two B-1 felonies, he acknowledged that arrangement and indicated that he personally accepted it. (Id.). Thus, Petitioner's claim is baseless.

To the extent that Petitioner is attempting to argue that counsel hid the last two pages of the Transcript of Plea form from him, such an argument is unavailing. The Transcript of Plea form is a four-page document that memorialized the trial court's plea colloquy with Petitioner. The first two pages of that form contain the trial court's questions and Petitioner's answers establishing his ability to enter his pleas, his understanding of the proceeding and his various rights, and his acknowledgment of the above-noted term of his plea arrangement. (Id., Exhibit 1 at 1-2). The third page of that form merely listed the charges to which he confessed, their case numbers, statutory references, dates, offense classifications and penalties. Because the record reflects that Petitioner was apprised of those matters during his plea proceeding and told the Court that he understood them, he cannot demonstrate any prejudice on the basis of his allegation that counsel concealed the third page from him. (See id., Exhibit 2 at 2-3). Likewise, because the last page of the form provided for dismissed charges and Petitioner had no such charges, he also cannot demonstrate any prejudice on the basis of his allegation that he did not see it. (Id., Exhibit 1 at 4).

### *2.     Inability to present evidence*

Petitioner also complains that counsel told him that he could not present evidence to dispute the State's facts despite the availability of such evidence. However, by entering an unconditional guilty plea to the charges, Petitioner admitted all of the facts necessary to support his convictions. See Broce, 488 U.S. at 569. Therefore, in the absence of Petitioner's specific identification of the evidence that he desired to present and his explanation of how that evidence would have favorably impacted his case, he cannot show any prejudice in connection with this claim.

Moreover, the record shows that Petitioner actually did present evidence when he took the stand, read his confession into the record, testified in his own behalf and called additional witnesses. (Doc. No. 6, Exhibit 2 at 23-61). At no time did Petitioner or his witnesses deny his guilt to the offenses described in the State's proffer, other than Petitioner's wife's general expressions of disbelief at his guilt and his own self-serving, unsupported claim that he had been too incapacitated to molest the victim on the occasion when he was a house guest in September 2002. In fact, on direct examination, Petitioner took full responsibility for his conduct. (Id. at 55). When his attorney asked him if he had anything else that he wanted the Court to know, Petitioner only apologized for his offenses and asked for rehabilitation. (Id. at 55-56). Therefore, the Court finds that this claim also is without merit.

### *3.     Counsel's stipulations to the prior record point and level*

Petitioner complains that counsel was ineffective at sentencing for having stipulated to his having a prior record point and to his being subject to sentencing under Prior Record Level II, all against his expressed wishes. (Doc. No. 1 at 7). However, he fails to explain how he was

harmed by these stipulations. (Doc. No. 1 at 7). That is, Petitioner does not deny that he sustained the subject worthless check conviction to which counsel stipulated. Nor does he deny that such conviction properly was treated as a Class 1 misdemeanor, thereby subjecting him to a prior record point and to sentencing under Prior Record Level II. (See Doc. No. 6, Exhibit 3 at 2). To the contrary, the record reflects that Petitioner remained silent when his attorney made those stipulations in his presence, and that he did not take issue with them during his subsequent testimony or during his allocution. (Id., Exhibit 2 at 56).

On this record, the Court finds that Petitioner has failed to establish either deficient performance or prejudicial result on the basis of these allegations. The Court is unpersuaded that the State court's result is legally or factually unreasonable. See Jarvis, 236 F.3d at 163.

### C. Inability to present evidence

Petitioner is also not entitled to relief on his separately delineated claim that he was denied his right to present evidence because he was told by counsel that he could not do so. As was discussed above, this allegation is belied by the record. Therefore, the Court is unpersuaded that the State court's result is legally or factually unreasonable. Jarvis, 236 F.3d at 163.

### D. Challenge to Confession

Petitioner last claims that his confession was unlawfully induced and is invalid because of the conduct of the officers who obtained it. (Doc. 1 at 10). As with his first claim, however, Petitioner did not attempt to rebut Respondent's assertion that the claim, though adjudicated on the merits in State court, is barred by his guilty pleas.

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects[.]" United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). That is, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has

solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett 411 U.S. at 267; see also McMann v. Richardson, 397 U.S. 759, 767-70 (1970) (holding that a knowing, voluntary, counseled guilty plea is not subject to challenge on collateral review even if motivated by existence of a coerced confession); see also Hall v. McKenzie, 575 F.2d 481, 484 (4th Cir. 1978) (finding that a guilty plea entered in state court foreclosed defendant's right to challenge in a habeas proceeding the constitutionality of a hearing held before entering that plea). While Petitioner has attempted to challenge counsel's performance at his plea hearing, he does not challenge the validity of that proceeding. Nor has the Court found any basis for finding that the proceeding somehow was invalid. Therefore, Petitioner's guilty pleas also stand as a bar to his ability to challenge the constitutionality of his pre-trial confession to authorities.

In any event, this Court finds that the claim is belied by the record. First, Petitioner took the stand and read his confession, wherein he stated that he was giving that statement to authorities because he was "tired of feeling the way [he did], having the effect others [sic] and wanting, wholeheartedly, to change [his] life." (Doc. No. 6, Exhibit 2 at 46). Furthermore, Petitioner testified that he made his confession with an understanding that he did not have to talk with authorities. (Id. at 54). He further testified that the officer conducting the interview had said:

> Tom, I know you want to help Zach. We want to help both of you. Just tell me what happened. She said, You're in bad health, your wife is in bad health.

(Id.). Therefore, Petitioner's belated assertions of coercion and that this testimony was false are simply insufficient to overcome the impact of his sworn testimony to the contrary. See generally

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (stating that defendant's plea and statements made during Rule 11 proceedings "constitute a formidable barrier" to their subsequent attack). Accordingly, this Court is unpersuaded that the State court's result is legally or factually unreasonable. See Jarvis, 236 F.3d at 163.

### III. CONCLUSION

This Court has carefully considered Petitioner's § 2254 Petition, the State record, Respondent's Motion for Summary Judgment, and the relevant precedent, and has determined that Respondent is entitled to relief as a matter of law. Therefore, Respondent's Motion for Summary Judgment will be granted, and Petitioner's § 2254 Petition will be denied and dismissed.

**IT IS, THEREFORE, ORDERED that**:

1. Respondent's Motion for Summary Judgment is **GRANTED**;

2. Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED** and **DISMISSED**; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484-85 (2000) (in order to satisfy § 2253(c) when a court denies relief on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right).

Signed: November 29, 2010

Robert J. Conrad, Jr.
Chief United States District Judge